745 F.2d 781
 40 Fed.R.Serv.2d 176
 Melvin SATCHELL, Plaintiff-Appellant,
v.
Donald DILWORTH, John F. Finnerty, Salvatore Romano, Dennis
Romano, Robert DeCarlo, Senior Warrant Officer, New York
State Department of Correctional Services, individually and
in his official capacity and Frank Sicaro, Detective,
Suffolk County District Attorney's Office, individually and
in his official capacity, Defendants-Appellees.
 No. 1478, Docket 84-2007.
 United States Court of Appeals,
Second Circuit.
 Submitted July 17, 1984.
Decided Oct. 4, 1984.
 
 Melvin Satchell, plaintiff-appellant pro se.
 Martin Bradley Ashare, Suffolk County Atty., Hauppauge, N.Y. (Chris P. Termini, Asst. County Atty., Hauppauge, N.Y., of counsel), for defendants-appellees.
 Before NEWMAN and PRATT, Circuit Judges, and ROBERT J. KELLEHER, District Judge of the Central District of California, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 In our day-to-day work federal judges are called upon to review a seemingly endless parade of complaints by federal and state prisoners. Most of these complaints, particularly those where the prisoner appears pro se, prove to be frivolous, and are summarily disposed of. Occasionally, a complaint is filed that presents sufficient merit to warrant more intensive examination. This is such a case.
 
 
 2
 From the record before us it appears that plaintiff Melvin Satchell was illegally arrested by Suffolk County officers based on misleading and incomplete, if not deliberately false, information supplied to them by officials of the New York State Department of Correctional Services. Although his state sentence had actually expired, Satchell was arrested, on the purported authority of a confinement order, held for thirty-one days, released on a parole that should not have been imposed, and subsequently rearrested for violation of that improper parole. Satchell claims that all of the officials involved "knew or should have known" that, at the time he was taken into custody, the maximum expiration date of his state sentence had passed. Under the circumstances presented to us by this record, the possibility of a meritorious claim is sufficiently strong to require reversal of the judgment below and remand for further proceedings to enable the district court to examine more fully the factual circumstances underlying this pro se prisoner's civil rights complaint.
 
 FACTS
 
 3
 By order signed on June 29, 1978 ("the basic commitment order") Satchell was sentenced to one and one-half to three years on his plea of guilty to possession of gambling records. On the same day, the sentencing judge signed another order ("the supplemental order") giving the defendant pretrial, jail-time credit on his gambling sentence "for time served from October 25, 1977". This supplemental order is the key to this appeal. Although a copy of it is reproduced in the appendix on appeal, nothing in the record indicates that the supplemental order was brought to the attention of Judge Bartels below. Nevertheless, because the defendants have not challenged the supplemental order, we assume that it is authentic and valid.
 
 
 4
 Satchell's state sentence of one and one-half to three years was to run concurrently with a pending federal sentence, and was to be served at a federal prison. By virtue of the supplemental order, the maximum expiration date of the state sentence was October 24, 1980. On November 22, 1979 Satchell was released from federal custody and placed on federal probation. While the record is not clear, an error seems to have been made at this point, and Satchell was actually released rather than turned over to state custody to serve the remainder of his state sentence.
 
 
 5
 On August 6, 1980 Satchell was arrested for bank robbery and held on $10,000 bail. On October 29, five days after his state sentence had expired, Satchell posted the bail and was released. The record reflects that at this point a number of communications occurred between Suffolk County authorities and individuals in the state Department of Correctional Services. As a result, the department sent to the Suffolk County police what was claimed to be authority to take Satchell into custody to serve the remainder of his state sentence. What the Department of Correctional Services sent, however, was the basic commitment order reflecting a maximum expiration date of June 28, 1981. They apparently did not send a copy of the supplemental order to the county officials, nor did they remind the county of the eight months credit for time served that Satchell had received in that order. Satchell claims that the omission was intentional and resulted from a conspiracy between county and state officials to take him off the street pending his trial on the bank robbery charge.
 
 
 6
 We cannot tell from this record whether Satchell's rearrest and confinement resulted from malicious conspiracy or whether it was simply an oversight. What is clear, however, is that both the state and county officials were wrong in their contention that, after October 24, 1980, Satchell's sentence still had time to run. When Satchell brought a state habeas corpus proceeding two days after his arrest, defendant Salvatore Romano, warden of the Suffolk County jail, testified about the gambling sentence in the basic commitment order, but did not mention the supplemental order. Even in the papers submitted to Judge Bartels below by the county attorney's office, there is neither a copy of nor reference to the supplemental order. Although we do not assume that the supplemental order was deliberately concealed from the district court, neither can we assume that we are dealing with mere inadvertency.
 
 
 7
 After Satchell's state court habeas corpus application was denied, partly in reliance upon testimony by defendant Salvatore Romano, Satchell was remanded to the state prison authorities. He protested to various offices, but received no relief until he was released on state parole on December 19, 1980. Because his sentence had expired, the state had no right to place the restrictions of parole on him. Later, however, in February 1981, he was arrested, at least in part, for a parole violation. Finally, on March 17, 1981, Satchell was convicted on the bank robbery charge and received a sentence of twelve and one-half to twenty-five years, which he is now serving.
 
 PROCEEDINGS BELOW
 
 8
 By his pro se complaint under 42 U.S.C. Sec. 1983, filed in February 1981, Satchell sought extensive damages from a long list of state and county officials. Judge Bartels, in denying Satchell's application for court appointed counsel, stated:
 
 
 9
 Satchell's story of important officials' "bad-faith" conspiratorial effort to arrest him is not only totally unsubstantaited [sic] but is bizarre. The likelihood of Satchell presenting a meritorious case appears under the circumstances remote.
 
 
 10
 Six months after denying Satchell's request for court appointed counsel, Judge Bartels granted Satchell's motion to delete as defendants the state attorney general and the Suffolk County district attorney, and to add Robert DeCarlo, who was a senior warrant officer of the New York State Department of Correctional Services, and Frank Zaccaro (sometimes referred to in the papers as Frank "Sicaro"), who was a detective in the Suffolk County district attorney's office. In April 1983, the judge granted a motion by two of the state defendants, Edward R. Hammock, Chairman of the New York State Board of Parole, and Thomas A. Coughlin, Commissioner of Correctional Services, to dismiss the complaint against them on the ground that it did not allege that they had any personal involvement in the incidents complained of. Thereafter, the remaining county defendants moved to dismiss--four under Fed.R.Civ.P. 12(c), and one, Dennis Romano, under Fed.R.Civ.P. 56. In his memorandum and order granting all the motions, Judge Bartels noted that nothing in the complaint suggested that defendants Dilworth, Finnerty, Zaccaro and Salvatore Romano in any way contributed to the alleged deprivation of plaintiff's rights. In a footnote Judge Bartels also dismissed, sua sponte, the action against defendant DeCarlo, whose identity had yet to be established, for the same reason.
 
 
 11
 Judge Bartels granted summary judgment to defendant Dennis Romano, based on the qualified good faith immunity which he enjoys as a police officer. In reaching that conclusion, Judge Bartels expressly found it unnecessary to pass on plaintiff's claims that no time was due on his first state sentence, that Romano had detained Satchell at the insistence of parole officials after they "discovered" that plaintiff had not satisfied his June 1978 commitment order, and that plaintiff had offered no evidence to cast doubt on Romano's good faith in enforcing a detainer in the form of a facially valid commitment order.
 
 
 12
 Immediately after dismissal of the complaint, Satchell moved to vacate the judgment and to amend his complaint. His proposed second amended complaint set forth in much greater detail the theory of his claim and this time referred explicitly to the fact that the basic commitment order was "made to commence on October 25, 1977". Still, however, no copy of the supplemental order was presented to Judge Bartels. Perhaps it was for this reason that Judge Bartels denied the motion to vacate the judgment and to amend the complaint. He stated that no new evidence had been presented to warrant granting the motion, and even if new evidence had been presented, the court could not reward plaintiff's "dilatory tactics at this late hour on the ground of such 'newly discovered' evidence."
 
 DISCUSSION
 
 13
 A. Summary Judgment.
 
 
 14
 First, it was error to grant summary judgment to Dennis Romano. Unquestionably, a police officer is protected by a qualified good faith immunity under Sec. 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). However, this immunity is an affirmative defense that must be pled by the official who claims it. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982); Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Failure to plead an affirmative defense in the answer results in "the waiver of that defense and its exclusion from the case." 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1278, at 339 (1969); see Downing v. Williams, 624 F.2d 612, 626 n. 23 (5th Cir.1980), vacated on other grounds, 645 F.2d 1226 (5th Cir.1981) (en banc); see also Troxler v. Owens-Illinois, Inc., 717 F.2d 530, 533 (11th Cir.1983); Myers v. John Deere Ltd., 683 F.2d 270, 272-73 (8th Cir.1982); Pinto Trucking Service, Inc. v. Motor Dispatch, Inc., 649 F.2d 530, 534 (7th Cir.1981). Here, Romano's answer was a one sentence general denial of the allegations of the complaint; he raised no affirmative defenses whatsoever.
 
 
 15
 It is true that Romano's motion for summary judgment gave notice that he wished to assert a defense of good faith immunity, and if leave to amend the answer had been requested, it might well have been granted; but there was no amendment of the answer. Moreover, we are faced with a situation where a pro se plaintiff did not answer the motion papers and now claims that he did not realize that failing to answer them could result in dismissal of the complaint. See Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir.1983) (a pro se plaintiff must be given "notice of the possible consequences of failing to respond with contravening affidavits" before converting a motion to dismiss or motion for judgment on the pleadings into a motion for summary judgment and then granting judgment against the pro se plaintiff). Although the rules of civil procedure are necessary to the effective operation of our judicial system, the interests of justice counsel against their rigid application in certain situations. See id.; see also Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); Bayron v. Trudeau, 702 F.2d 43, 45 (2d Cir.1983). Under the present circumstances, where a pro se plaintiff has not responded to a summary judgment motion, it was error for the district court to grant defendant Dennis Romano judgment on an unpleaded defense.
 
 
 16
 B. Amendment of Complaint.
 
 
 17
 A pro se plaintiff who brings a civil rights action should be "fairly freely" afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint. Bradley v. Coughlin, 671 F.2d 686, 690 (2d Cir.1982). In essence, a pro se litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim. Under the circumstances here, we think it was unreasonable and an abuse of discretion for the district court to refuse to accept the proposed amendment.
 
 
 18
 When viewed in a light favorable to Satchell, see Maggette v. Dalsheim, 709 F.2d at 803, the second amended complaint on its face presents a cognizable claim for relief. If Satchell can demonstrate that any of the defendants intentionally concealed the supplemental order, or that there was a conspiracy among some or all of the defendants to conceal the order's existence, see Wilson v. Steinhoff, 718 F.2d 550, 552 (2d Cir.1983), Satchell may very well prevail. Indeed, if Satchell can prove that his thirty-one day unlawful incarceration resulted from mere negligence, he still may have a valid claim for damages. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979) ("mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'Liberty * * * without due process of law' "); Parratt v. Taylor, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (negligence can form the basis of a damage award under Sec. 1983).
 
 
 19
 Thus, not only do the allegations of the second amended complaint cure many of the deficiencies of the first amended complaint, but they may very well lead plaintiff to a recovery on his claim. Cf. Verhein v. South Bend Lathe, Inc., 598 F.2d 1061, 1063 (7th Cir.1979) (leave to amend properly denied where proposed amendment failed to allege facts supporting "a valid theory of liability").
 
 
 20
 In any event, we think further proceedings are necessary to determine why the supplemental order was not brought to the attention of the state court on the November 20, 1980 habeas corpus petition, and why it was not brought to the attention of each of the officials who had any part in the arrest and continued incarceration of Satchell. A serious error was apparently made, resulting in Satchell's incarceration for thirty-one days and his subsequent subjection to the restrictions of parole. Even more serious is Satchell's claim that the error was intentional. At the very least, careful inquiry, discovery, and further development of the facts is required before Satchell's action should be dismissed against any of the defendants, including Hammock and Coughlin. Plaintiff should have a reasonable opportunity, through discovery of those defendants named in his second amended complaint as well as of Hammock and Coughlin, to ascertain what individuals or policies caused him to be unlawfully incarcerated for 31 days.
 
 
 21
 We note that Hammock and Coughlin were not named as defendants in the proposed second amended complaint. Whether this was because plaintiff had already identified those individuals responsible for his incarceration, or because plaintiff believed at the time he submitted the proposed second amended complaint that defendants Hammock and Coughlin had been irretrievably dropped from the suit, we cannot tell. If plaintiff is otherwise unable to obtain the appropriate discovery, however, Hammock and Coughlin may be restored as defendants in the suit at least for purposes of discovery aimed at identifying those of their subordinates who are personally responsible for the departmental actions complained of. See Gordon v. Leeke, 574 F.2d 1147, 1152-53 (4th Cir.1978), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir.1980); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir.1980).
 
 
 22
 We also think that this case has sufficient merit and complexity to warrant the district judge on remand to reconsider his previous denial of Satchell's request for court appointed counsel.
 
 CONCLUSION
 
 23
 The judgment dismissing the complaint and the order denying plaintiff's motion to amend the complaint are reversed, and the case is remanded with directions to grant the motion to serve and file the second amended complaint and to conduct such further proceedings in the action as may be appropriate.