FILED
United States Court of Appeals
Tenth Circuit

December 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LORENZO S. MONTEZ,

      Plaintiff–Appellant,

v.

ROBERT O. LAMPERT, WDOC
Director; SANDRA LANDEROS,
WMCI Caseworker,

      Defendants–Appellees.

No. 14-8008
(D.C. No. 2:13-CV-00112-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **GORSUCH**, and **MORITZ**, Circuit Judges.

Lorenzo Montez, a Wyoming state prisoner proceeding pro se, appeals from the district court's order granting summary judgment to defendants on his 42 U.S.C. § 1983 claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Montez was temporarily housed at the Goshen County Detention Center ("Goshen") from March 18, 2013 to April 22, 2013. Although he did not report a hernia during his intake evaluation, he later asked his case worker, defendant Sandra Landeros, to assign him to a bottom bunk because of a hernia. Landeros looked for, but did not find, a bottom-bunk restriction in his file. She denied his request, assigned him to an upper bunk, and told him he had to go through the medical staff, who would "determine his medical need for a bottom bunk." Montez then asked Goshen employee Barbara Tuttle if he could be moved to a bottom bunk. On April 4, Tuttle responded that she had contacted Corizon, the contracted medical provider of the Wyoming Department of Corrections ("WDOC"), and was informed that Montez did not have a bottom-bunk restriction. Montez did have an old bottom-bunk restriction from Dr. John Coyle, but it did not indicate the reason for the restriction, and was valid only from April 3, 2008 to January 1, 2009. Montez later produced evidence that he had hernia surgery in 1998.[1]

On or about April 12, 2013, Montez fell while climbing down from his upper bunk and injured his arm. When nurse Kathy Moorehouse examined him shortly thereafter, she diagnosed a "light blue bruise" and prescribed ibuprofen. Montez

---

[1] Montez presented evidence of his 1998 surgery in a "Motion to Submit New Evidence." Because we may excuse pro se litigants for their "unfamiliarity with pleading requirements," we grant this motion. See, e.g., Diversey v. Schmidly, 738 F.3d 1196, 1199 (10th Cir. 2013).

requested an X-ray but did not receive one. At some point, Landeros allegedly told other staff members "not to worry" about his injury. She claims to have seen him carrying a television soon after his fall. In November 2013, after he had left Goshen, Montez's arm was finally X-rayed, and a nurse concluded that he "may have broken [his] arm bone right below [his] elbow."

Montez filed a grievance, which was denied. In May 2013, he sued Landeros for violating his Eighth Amendment rights by refusing to assign him to a bottom bunk and instructing staff "not to worry" about his injury. He also sued WDOC Director Robert Lampert. The district court converted defendants' motion to dismiss into a motion for summary judgment and granted it. Montez appealed.

## II

We review the grant of summary judgment de novo, "applying the same standard as the district court." Thomas v. City of Blanchard, 548 F.3d 1317, 1322 (10th Cir. 2008). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). We view the evidence and draw all reasonable inferences in the light most favorable to Montez, the nonmoving party. Tolan v. Cotton, 134 S. Ct. 1861, 1866-68 (2014). Because Montez proceeds pro se, we construe his filings liberally. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

-3-

## A

For Montez to prevail on his claim that the conditions of his incarceration violated his Eighth Amendment rights, he must prove: (1) the "conditions [were] sufficiently serious to implicate constitutional protection"; and (2) "prison officials acted with deliberate indifference to [his] health or safety." DeSpain v. Uphoff, 264 F.3d 965, 971 (10th Cir. 2001) (quotations omitted) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To prevail on the objective "sufficiently serious" prong, Montez must prove that he was "incarcerated under conditions posing a substantial risk of serious harm." Id. "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotations omitted). The subjective "deliberate indifference" prong is a test "equal to recklessness." DeSpain, 264 F.3d at 972. It "is met if a prison official knows of and disregards an excessive risk to inmate health or safety." Sealock, 218 F.3d at 1209 (quotations omitted).

## 1

On appeal, Montez repeats his argument that Landeros' refusal to assign him to a bottom bunk violated his Eighth Amendment rights. Viewing the facts in the light most favorable to Montez, we assume that there is a causal link between his hernia, fall, and arm injury. But his statement to Landeros, by itself, does not prove that assigning him to an upper bunk objectively posed a substantial risk of serious harm. See Farmer, 511 U.S. at 834 (requiring such a showing where claim is "based

-4-

on a failure to prevent harm"). He has yet to provide a physician's diagnosis of a hernia that necessitated his assignment to a bottom bunk while he was at Goshen. And the records Montez submitted on appeal show only that he had a hernia operation in 1998. They do not say if he continued to suffer any hernia-related symptoms while at Goshen, nor do they document any bottom-bunk restriction beyond Dr. Coyle's, which expired in 2009. Moreover, a 15-year-old hernia operation would neither present symptoms readily ascertainable to a lay person, nor make it obvious to a lay person that a bottom-bunk assignment was necessary. See Sealock, 218 F.3d at 1209. Montez thus fails the objective prong of the Farmer test.

Because his need for a bottom-bunk assignment based on his 15-year-old hernia operation was not obvious, Montez cannot show that Landeros disregarded an excessive risk to his health or safety by assigning him to a top bunk. See Farmer, 511 U.S. at 842 (stating that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). Landeros did make some effort to investigate Montez's claims that he had a bottom-bunk assignment, but found nothing to confirm them, and thus is not liable for failing to investigate. See id. at 843 n.8 (explaining that a defendant can be liable under the Eighth Amendment if "he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist"). The fact that Landeros investigated Montez's claim demonstrates that she did not recklessly disregard it. He thus does not meet the subjective prong of the Farmer test.

-5-

## 2

Montez's claim that Landeros was deliberately indifferent to his arm injury by telling Goshen staff "not to worry" also does not meet the objective prong of Farmer. Montez was diagnosed with only a "light blue bruise" by a nurse, who was more sophisticated than a lay person. Moreover, when he did receive an X-ray, it revealed only that he "may" have broken his arm, meaning there is no evidence of a physician's diagnosis confirming that he broke his arm in the April 2013 fall.

Nor does Montez prevail on Farmer's subjective prong on this claim. Landeros observed him carrying a television not long after he fell. Based on this observation, Landeros can hardly be considered reckless by telling others "not to worry" about Montez's arm, or to have disregarded an excessive risk to his safety. See id. at 842 (reasoning that the obviousness of risk can support finding that defendant knew risk was "substantial").

## B

Montez also argues that WDOC Director Lampert is liable for the injuries he suffered. "Supervisory status alone does not create § 1983 liability. Rather, there must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations and quotations omitted). Montez can only affirmatively link Lampert to his injuries through a letter denying his grievance appeal, and we have concluded that denials of grievances alone do not link prison officials to constitutional deprivations. Id.

Citing Satchell v. Dilworth, 745 F.2d 781, 786 (2d Cir. 1984), Montez claims that a supervisory official may be retained as a defendant for the purpose of discovering which of the official's subordinates are the proper defendants. But Montez did not seek discovery before the district court, and on appeal he has not suggested that he was unable to identify any other potential defendants. Accordingly, Satchell provides no basis for Montez to retain Lampert as a defendant.

## C

On appeal, Montez also argued that WDOC employees retaliated against him. "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations omitted). "An inmate must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and emphasis omitted). Montez has failed to allege any specific facts showing specific acts of retaliation against him by WDOC staff or officials as a result of his grievance or this lawsuit. He is accordingly not entitled to relief.

## D

Finally, Montez argues that Corizon failed to update or timely deliver medical records showing that he had hernia surgery in 1998. We reject this argument because he did not advance this argument in the district court. Consequently, there is nothing for us to review. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 640 (10th Cir. 2012) (explaining that an appellant is barred from raising a claim not asserted in the district court).

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**. We **GRANT** Montez's motion to submit new evidence. We instruct the clerk's office to file "Appellant's Combined Opening Brief and Application" as his reply brief, and we **DENY** the request therein for habeas corpus relief.[2] We also **DENY** the request therein that we appoint counsel, because Montez has ably presented relevant arguments while proceeding pro se. We **GRANT** Montez's motion to proceed in forma pauperis, but we remind him that he is obligated to continue making partial payments until his entire filing fee is paid in full.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[2] Montez did not request habeas corpus relief before the district court, and he is accordingly barred from requesting it on appeal. Daniels, 701 F.3d at 640.